CAGUAS BUS LINE, INC., Plaintiff and Appellant, *v.* FERNANDO SIERRA BERDECÍA, COMMISSIONER OF LABOR OF PUERTO RICO ET AL., Defendants and Appellees.

No. 10488. Argued June 5, 1952.—Decided September 17, 1952.

692

*H. Ramos Mimoso* for appellant. *Joaquín Gallart Mendía, counsel for the Department of Labor,* for appellees. *Lino J. Saldaña* as *amicus curiae.*

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a suit for a declaratory judgment by the Caguas Bus Line, Inc. against the Commissioner of Labor, an investigator of the Department of Labor and seven of the plaintiff's employees who work as starters on the bus line which it operates between Caguas and Río Piedras and between Caguas and Humacao. The plaintiff has appealed from the judgment of the district court, assigning four errors.

The first assignment is that the lower court erred in holding that the starters are semi-skilled and not unskilled workers under Mandatory Decree No. 12 of the Minimum Wage Board for the Transportation Industry. Originally the decree, which went into effect on January 2, 1947, simply classified employees in the transportation industry as skilled, semi-skilled and unskilled. Thereafter the Board amended the decree, effective February 1, 1948. In the amended decree the terms in question were for the first time defined as follows:

"C— By *skilled laborer* is meant every workman who has full knowledge, understanding, and mastery of the manual technique and of the process involved in the performance of any of the occupations generally acknowledged as trades, such as, but not limited to, the following: mechanics, electricians, carpenters, saddlers, blacksmiths, painters, tinmen, solderers, plumbers, turners, and cabinet-makers. He should have ability to do the work that may be assigned to him within his trade

with an independent mind and without the necessity that he be instructed in detail as to how he should do his work, it being sufficient to indicate to him the kind of work, that it is desired to effect. He should have acquired previous experience in the work he is to perform.

"D— By *semiskilled laborer is meant every laborer who,* without having the degree of knowledge, understanding and mastery of the manual technique and of the processes which are required from the skilled laborer for the practice of his trade, *possesses, however, certain knowledge which permits .him to execute under supervision certain work within his trade.* There shall be comprised in this class, without it involving any limitation, the helpers in the trades enumerated in the definition of skilled laborers, the greasers, and the rubber-tire mounters (*gomeros*).

"E— By *unskilled laborer is meant every laborer who performs labor, the execution of which does not require a previous period of training.* There shall be comprised in this class, without it involving any limitation, the following: peons or ordinary laborers, conductors, washers, helpers for selling (oil, air, water, and gasoline), watchmen, messengers, and janitors." (Italics ours.)

On the basis of testimony adduced before it, the district court made the following findings of fact as to the nature of the duties of the starters who work for the appellant:

"(*a*) To make a note of the departure and arrival time of the buses;

"(*b*) To count the passengers, check the number of passengers and make certain that the chauffeur rings up the correct number on the register box;

"(*c*) To keep a record of the said operations, showing the number of buses and the trips it takes, as well as the number of passengers, the departure and arrival, with the hours thereof;

"(*d*) To perform the function of supervision, although limited, of the chauffeurs, being required to advise the employer of any irregularities committed by them;

"(*e*) To indicate to the chauffeur the departure time for each bus, exercising in this manner discretionary and executive powers."

The appellant concedes that these findings are justified by the testimony, with the exception of (e). We have examined the record and are of the view that it contains evidence sufficient to support the findings of fact entitled (e). On the basis of these findings, we agree with the conclusion of law of the lower court that, both under the original and the amended decree, the employees herein were properly classified as semi-skilled workers in the informal administrative ruling of the Department of Labor which precipitated this case.

The argument of the appellant in substance is that the work of the conductors on its buses requires more skill and knowledge than the work of the starters; the conductors are classified under the amended decree as unskilled; a fortiori, the starters should be classified as unskilled. We cannot agree. The duties assigned to the conductors and the category into which they fit under the amended decree by virtue of those duties represents a problem which is not before us at this time. We hold only that the duties of the starters on this line as found by the lower court justify their classification as semi-skilled employees.

The appellees concede and we agree that it would have been more desirable to include specifically among the occupations classified as semi-skilled the job of starter. But the definition itself states clearly that the occupations listed are illustrative and not all-inclusive. The failure to include the post of starter in any of the three categories makes it necessary to determine into which group it fits. And as already noted, we think the Department of Labor and the lower court came to the proper conclusion in characterizing the starters as semi-skilled under the facts of this case.

The second assignment is that if the starters are held to be semi-skilled, that decision should be prospective and not as of the date of the original decree. We fail to see how we can reach that conclusion. The appellant ran the risk

that it was underpaying its starters when it compensated them at the rate of 30 cents an hour, as fixed in both the original and amended decree for unskilled employees, rather than at 40 cents an hour, the rate for semi-skilled workers. To hold that the starters are to be paid as semi-skilled workers only as of the date a court so decides is not only contrary to the Minimum Wage Act which provides for the effective date of decrees, but it would also furnish an easy method for employers to postpone for a considerable period their obligations under the Act.

In arguing this error, the appellant concedes that ordinarily an agreement between the employer and his employees for a lower rate of pay than that provided by law is superseded by the statute in question. *Sierra, Commissioner* v. *San Miguel*, 70 P.R.R. 573. But it argues that this case is distinguishable because of the alleged uncertainty with reference to the classification of starters. Aside from the fact that the record contains no evidence of any agreement as such between the employer and the employees, we fail to see any distinction between the two types of cases. When the original decree was issued, the appellant maintained that its starters were unskilled. After the amended decree was entered with its definitions of the three categories, it persisted in this attitude. Once the matter is settled by litigation, the decree obviously must be applied as of the date it originally became effective, and not as of the date of the decision of the controversy by the courts. *Cf. Sierra, Commissioner* v. *Quilinchini*, 72 P.R.R. 615.

The third assignment is that the lower court erred in holding that it had no jurisdiction to pass on the contention of the appellant that Mandatory Decree No. 12 is null because it is confusing and ambiguous. We recently held that where an employer brings a petition for review in this Court of a decree of the Minimum Wage Board and we enter a judgment affirming the decree, the same employer cannot

thereafter make a collateral attack on the decree in another proceeding by raising new issues, including constitutional questions, which he could have, but did not, raise in his petition for review. *Commissioner of Labor* v. *South Porto Rico Sugar Co., ante,* p. 151. In the instant case the appellant appeared in the proceeding before the Board when it was considering the questions involved in entering Decree No. 12. It made substantially the same contention it now presses under this assignment. However, although it had ample opportunity to do so, the appellant did not file a petition for review here. For the same reasons stated in the *South Porto Rico* case, the appellant cannot engage in piecemeal litigation by now raising in an independent proceeding in the courts an issue which was decided against it by the Board and on which it did not seek review in this Court. Moreover, we affirmed the original Decree No. 12 in a proceeding brought by another transportation company in which the decree was attacked on similar grounds. *American R. R. Co.* v. *Minimum Wage Board,* 68 P.R.R. 736.

The fourth assignment is that the lower court erred in holding that Act No. 379, Laws of Puerto Rico, 1948, superseded the provision in Decree No. 12 for payment at 1½ times the regular rate after the ninth hour of work.

Act No. 379, which took effect on May 15, 1948, establishes eight hours as the regular workday in Puerto Rico and requires pay at double the regular rate for work in excess thereof. But the appellant argues that Act No. 379 does not apply to its employees in view of the provision in § 22 of the said Act that "all the terms" of the Minimum Wage Act and the mandatory decree promulgated pursuant thereto "shall remain in full force and effect". It asserts that by virtue of § 22 the requirement in Decree No. 12 for double pay for the ninth hour and pay at the rate of 1½ times the regular rate for work after the ninth hour is still in effect.

In our original opinion we rejected this contention. We stated that "in providing in § 22 that the Minimum Wage Act and the decrees of the Board shall remain in effect, the Legislature meant that the previous decrees should remain in effect only to the extent that the decrees (1) either concerned matters not covered by Act No. 379 or (2) established standards *superior* to those found in Act No. 379." On reconsideration, we have concluded that we were mistaken in that view.

Act No. 379 replaced Act 49 of August 7, 1935. *Cf. Cardona* v. *District Court*, 62 P.R.R. 59. It is a sweeping statute providing for double pay for overtime as a general principle. Moreover, its coverage as defined in § 16 is very broad; it includes industries, such as transportation, for which the Board had previously issued mandatory decrees. It was therefore necessary for the Legislature to choose between alternatives. It could have superseded the provisions of these decrees as to overtime pay by applying the terms of Act No. 379 thereto without qualification. Or it could have permitted such decrees to remain in effect as to overtime pay until they were modified by the Board.

The Legislature was aware of this problem. And it deliberately provided in § 22 that these decrees "shall remain in full force and effect." We cannot restrict the scope of this plain and absolute language by reading it as providing that the decrees shall remain in effect only to the extent that they establish standards superior to those found in Act No. 379. To so hold would be to invade the functions of the Legislature. *In re Castro* and *Torres Braschi, ante,* p. 517. The statement in § 22 means what it says. Consequently, the provision in Decree No. 12 for overtime pay at 1½ times the regular rate after the ninth hour was continued in effect by § 22.

The appellant and the *amicus curiae* concede that Act No. 379 is controlling as to all future decrees or amendments of existing decrees. They contend, however, that the Legislature intended by § 22 to leave undisturbed the delicate balance achieved by the Board in fixing in its decrees regular pay, overtime pay, vacations, sick leave, and working conditions in the light of the facts in each industry. See § 1 of Act No. 8, Laws of Puerto Rico, 1941. The appellees dispute this argument. Their position is that the Board does not take overtime rates into consideration in establishing regular rates of pay. Rather, according to the appellees, the only purpose of overtime pay is to discourage overtime work in order to preserve the health of employees. We need not resolve this dispute between the parties as to the factors taken into consideration by the Board in fixing the rate of overtime pay. It is enough to say that the Legislature made a clear and deliberate choice in § 22 to preserve the overtime pay provided in existing decrees.

There is one exception to the proposition that by virtue of § 22 the terms of previous decrees remain in effect. Section 6 provides that eight hours shall constitute a workday, unless "by custom, nature of the work, provision of law, decree of the Minimum Wage Board, or collective agreement, the maximum working hours are less than eight hours a day." Section 6 then goes on to say that "Every *decree*, agreement, clause, or stipulation, that fixes a working day of more than eight hours, shall be null." (Italics ours.) It therefore goes without saying that any provision in a previous decree making a workday more than eight hours has been superseded.

For the reasons stated, our opinion and judgment of March 21, 1952 affirming the judgment of the former district court will be withdrawn. Instead, a new judgment will be entered modifying the judgment of the former dis-

trict court by declaring that Act No. 379, Laws of Puerto Rico, 1948, did not supersede the provision in Mandatory Decree No. 12 for payment to employees at 1½ times the regular rate after the ninth hour of work. As thus modified, the judgment will be affirmed.